1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF COLUMBIA
8

9    NATIONAL MINING ASSOCIATION        )
                                        )
10              *Plaintiff-Petitioner*   )      CASE NO.      1:04-cv-00128 BJR
                                        )
11              v.                       )
                                        )      ORDER GRANTING DEFENDANTS'
12   OFFICE OF HEARINGS AND             )      MOTION FOR SUMMARY JUDGMENT
     APPEALS, et al.                    )      AND DENYING PLAINTIFF'S MOTION
13                                       )      FOR SUMMARY JUDGMENT
                                        )
14              *Defendants*.            )
     _____
15

16       This matter comes before the court on cross motions for summary judgment. Plaintiff is

17   the National Mining Association ("NMA"), the national trade association of the mining industry.

18   Defendants are the Office of Hearings and Appeals ("OHA"), the U.S. Department of the Interior

19   (the "Department"), and Kenneth Salazar, Secretary of the Department. OHA is a sub-agency of

20   the Department and has as its purpose hearing and determining matters within the Department's

21   jurisdiction. The Department's jurisdiction includes matters arising under the Surface Mining

22   Control and Reclamation Act of 1977, 30 U.S.C. §101 *et seq*. ("SMCRA").

23       On January 27, 2004, Plaintiff filed a complaint seeking judicial review of the November

24   28, 2003 "Final Rule" (68 Fed. Reg. 66723) published by OHA pertaining to regulations

25   allocating the burden of proof in five types of administrative proceedings under the SMCRA.

ORDER-1

NMA seeks declaratory and injunctive relief. NMA filed a Motion for Summary Judgment. Defendants filed an opposition and a Cross Motion for Summary Judgment. While the motions for summary judgment were pending, OHA filed a Notice of Supplemental Authority, to which NMA responded. The action was reassigned on November 30, 2010, and is ripe for review. The parties and the court are in agreement that this matter must be resolved with reference to the briefing and the administrative record.

## I. BACKGROUND

### A. Applicable Statutes and Regulations

#### 1. Administrative Procedure Act ("APA")

The APA, 5 U.S.C. §551 *et seq.*, with some exceptions applies to all adjudications that are required by statute to be determined on the record after an opportunity for an agency-level hearing. 5 U.S.C. §554. Section 556 provides that in such hearings, unless "otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. §556(d).

#### 2. Surface Mining Control and Reclamation Act and Corresponding OHA Implementing Regulations

In 1977, Congress enacted the SMCRA, 30 U.S.C. §1201 *et seq.*, to "establish a nationwide program to protect society and the environment from the adverse affects of surface coal mining operations." 30 U.S.C. §1202(a). The Office of Surface Mining Reclamation and Enforcement ("OSM") is the entity charged with implementing and enforcing the SMCRA. 30 U.S.C. §1211. Pursuant to the SMCRA, no entity may engage in a surface coal mining operation without first obtaining a permit from OSM. 30 U.S.C. §1256(a). The statute further requires mine operators to abide by performance standards incorporated into the permits. *See, e.g.,* 30 U.S.C. §1265 (environmental protection performance standards). The SMCRA authorizes OSM to assess civil penalties for violations of permit, or other SMCRA, requirements. 30 U.S.C.

§1268(a) & (f). However, any such OSM decision may be appealed to the Secretary, and must include the opportunity for a public hearing conducted in accordance with the Administrative Procedure Act. 30 U.S.C. §1268(b). There are five SMCRA provisions that are relevant to this case, each of which establishes a proceeding for the review of a particular type of agency action. In 1978, OHA issued regulations outlining the procedures to be used at proceedings conducted pursuant to the SMRCA. *See* 43 Fed. Reg. 34386 (1978). The relevant SMCRA provisions and the corresponding OHA implementing regulations are described below.

### a. *Proceedings To Review Notices of Violation or Cessation Orders (SMCRA §521)*

Section 525(a)(1) of the SMCRA, 30 U.S.C. §1275(a)(1), provides as follows:

> A permittee issued a notice or order by the Secretary pursuant to the provisions of subparagraphs (a)(2) and (3) of section 521 of this title [30 U.S.C. §1271], or pursuant to a Federal program or the Federal lands program, or any person having an interest which is or may be adversely affected by such notice or order or by any modification, vacation, or termination of such notice or order, may apply to the Secretary for review of the notice or order within thirty days of receipt thereof or within thirty days of its modification, vacation, or termination. Upon receipt of such application, the Secretary shall cause such investigation to be made as he deems appropriate. Such investigation shall provide an opportunity for a public hearing, at the request of the applicant or the person having an interest which is or may be adversely affected, to enable the applicant or such person to present information relating to the issuance and continuance of such notice or order or the modification, vacation, or termination thereof. The filing of an application for review under this subsection shall not operate as a stay of any order or notice.

Under Section 525(a)(2), "[a]ny such hearing shall be of record and shall be subject to the APA §554.

OHA's implementing regulation for proceedings to review notices of violation or cessation orders, 43 CFR 4.1171, provides that although OSM has the "burden of going forward

ORDER-3

to establish a prima facie case as to the validity" of the notice or order or its modification, vacation or termination; the "ultimate burden of persuasion" rests with the applicant for review

### b.  Civil Penalty Proceedings (SMCRA §518)

Section 518(a) of the SMCRA, 30 U.S.C. 1268(a), provides that a permittee who violates the Act or a permit condition may be assessed a civil penalty. Section 518(b) provides that the penalty may only be assessed after the person charged with a violation has been given the opportunity for a public hearing conducted in accordance with Section 554 of the APA. Section 518(c) provides that the person charged may contest the amount of the penalty or the fact of the violation. Section 518(b) provides that, when there has been a hearing, "the Secretary shall . . . issue a written decision as to the occurrence of the violation and the amount of the penalty which is warranted" and "shall consolidate such hearings with other proceedings under section 521" when appropriate.

When OHA originally adopted the regulation governing burdens of proof in civil penalty proceedings, 43 CFR 4.1155, it allocated the burden of going forward to establish a *prima facie* case and the burden of persuasion to OSM, with respect to both the fact of violation and the amount of the penalty. 43 FR 34376, 34393 (Aug. 3, 1978). Ten years later, for a variety of reasons (*see* 52 FR 38246-38247 (October 15, 1987)), OHA amended §4.1155 to provide that "OSM shall have the burden of going forward to establish a prima facie case as to the fact of the violation and the amount of the civil penalty and the ultimate burden of persuasion as to the amount of the civil penalty."A person who petitions for review of a proposed assessment of a civil penalty, however, has "the ultimate burden of persuasion as to the fact of the violation."

### c. Individual Penalty Proceedings
### (SMCRA § 518(f))

Section 518(f) of the SMCRA, 30 U.S.C. 1268(f), provides that when a corporate permittee violates a condition of its permit or fails or refuses to comply with any order issued under Section 521 or any order in a final decision by the Secretary (with certain exceptions), any director, officer, or agent of the corporation who wilfully and knowingly authorized, ordered, or carried out the corporation's violation or its failure or refusal to comply, "shall be subject to the same civil penalties . . . that may be imposed upon a person" under section 518(a).

43 CFR 4.1307(a) allocates to OSM the burden of going forward with evidence to establish a *prima facie* case that (1) the corporation violated a permit condition or failed or refused to comply with an order; (2) the individual was a director, officer, or agent of the corporation at the time of the violation; and (3) the individual acted wilfully and knowingly. Section 4.1307(b) imposes on the individual the ultimate burden of persuasion as to (1) whether the corporation violated a permit condition or failed or refused to comply with an order and (2) whether he or she was a director or officer at the time of the violation or refusal. Section 4.1307(c) imposes on OSM the ultimate burden of persuasion as to (1) whether the individual was an agent of the corporation and (2) the amount of the individual civil penalty.

### d. Permit Suspension or Revocation Proceedings
### (SMCRA §521(a)(4))

Section 521(a)(4) of the Act, 30 U.S.C. 1271(a)(4), provides as follows:

> When, on the basis of a Federal inspection . . . , the Secretary or his authorized representative determines that a pattern of violations of any requirements of this Act or any permit conditions required by this Act exists or has existed, and if the Secretary or his authorized representative also finds that such violations are caused by the unwarranted failure of the permittee to comply with any requirements of this Act or any permit conditions, or that such violations are wilfully caused by the permittee, the Secretary or his

authorized representative shall forthwith issue an order to the permittee to show cause as to why the permit should not be suspended or revoked and shall provide opportunity for a public hearing. If a hearing is requested, the Secretary shall inform all interested parties of the time and place of the hearing. Upon the permittee's failure to show cause as to why the permit should not be suspended or revoked, the Secretary or his authorized representative shall forthwith suspend or revoke the permit.

Section 525(d) of the SMCRA, 30 U.S.C. 1275(d), provides that the hearing shall be of record and subject to Section 554 of the APA.

OHA's regulations at 43 CFR 4.1194 provide that, in such proceedings, OSM has the burden of going forward to establish a *prima facie* case for suspension or revocation of the permit, but the ultimate burden of persuasion that the permit should not be suspended or revoked rests with the permittee.

### e.  Proceedings to Review Permit Revisions Ordered by OSM (SMCRA §511)

Section 511 of the SMCRA, 30 U.S.C. § 1261, applies to revision of permits. Section 511(a) provides that, during the term of the permit, a permittee may apply for a revision to a permit. Section 511(c) provides that the regulatory authority must, within time limits prescribed in regulations, review outstanding permits and may require reasonable revision or modification of permit provisions during the term of the permit. The revision or modification is to be "based upon a written finding and subject to notice and hearing requirements established by the State or Federal program." *Id.*

OSM's implementing regulations at 30 CFR 774.10(a) provide that the regulatory authority must review each permit issued under an approved program not later than the middle of each permit term. The regulatory authority "may, by order, require reasonable revision of a permit * * * to ensure compliance with the Act and the regulatory program." §774.10(b). Any

ORDER-6

order requiring revision of a permit "shall be based upon written findings and shall be subject to the provisions for administrative and judicial review in [30 CFR] part 775." §774.10(c). Under §775.11(c), all hearings "under a Federal program for a State or a Federal lands program * * * on an application for approval of * * * permit revision shall be of record and governed by 5 U.S.C. 554 and 43 CFR part 4."

OHA's regulations at 43 CFR 4.1366(b) provide that, in a proceeding to review a permit revision ordered by OSM, OSM has the burden of going forward to establish a *prima facie* case that the permit should be revised, and the permittee has the ultimate burden of persuasion.

**B. Procedural Background**

In 1996, NMA filed a petition for rulemaking seeking amendment of OHA's implementing regulations for each of the five statutory provisions at issue. A.R. 104-28. NMA argued that these five OHA regulations impermissibly shift the ultimate burden of persuasion from the proponent of the regulation, as required by the APA, to the entity challenging agency action. A.R. 106-09. According to NMA, the impetus for this petition was the 1994 Supreme Court opinion in *Director, Office of Workers'Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267 (1994). A.R. 110-14. In *Greenwich Collieries*, the Supreme Court invalidated a rule utilized by Department of Labor Administrative Law Judges in certain types of claim adjudications. *Greenwich Collieries*, 512 U.S. 267, 281 (1994). The Court ruled that the "True Doubt Rule" impermissibly shifted the burden of persuasion, in circumstances where the evidence was equally balanced, from the claimant to the party opposing the benefits claim, in violation of the APA. *Id.* The Supreme Court evaluated the meaning of the term "burden of proof" as used in APA §556(d) and concluded that it referred to the ultimate burden of persuasion, not simply the burden to present *prima facie* evidence in support of a claim. *Id.* at

ORDER-7

276. NMA argued that that the holding of *Greenwich Collieries* required OHA to amend its regulations to be consistent with the APA requirement that OSM, as proponent of the challenged action, carry the ultimate burden of proof. A.R. 114. OHA declined to consider the petition at that time, deciding that it would be most prudent to wait for a decision in a related litigation, *National Mining Association v. U.S. Dep't of the Interior*, 251 F.3d 1007 (D.C. Cir. 2001) ("*NMA v. DOI 2001*").[1]

### C.  OHA's November 28, 2003 Decision

In 2003, having received no ruling, NMA requested that OHA rule on its 1996 petition. A.R. 77-78. On March 20, 2003, OHA published the petition in the Federal Register for public comment. A.R. 2-6, 68 Fed. Reg. 13657, March 20, 2003. On November 28, 2003, OHA published its decision, substantially denying the petition. A.R. 18-23, 68 Fed. Reg. 66723 (November 28, 2003).

The crux of OHA's ruling is its disagreement with "the premise of the NMA petition, i.e., that SMCRA does not provide for a burden of proof distinct from that set forth in section 556(d) of the APA for the proceedings NMA addresses." A.R. 19, 68 Fed. Reg. 66723 (November 28, 2003), p. 66724. OHA found that the SMCRA itself contained allocations of the burden of proof for the types of hearings at issue, and that therefore, the burden of proof allocation contained in APA §556(d), as well as the Supreme Court's interpretation of it, is irrelevant. A.R. 19, 68 Fed. Reg. 66723 (November 28, 2003), p. 66724. OHA, however, did not issue a simple denial of NMA's petition. OHA instead analyzed each of the challenged regulations, finding, with one exception, that the corresponding SMCRA provision contained a burden of proof allocation,

---

[1] *National Mining Association v. U.S. Dep't of the Interior*, 251 F. 3d 1007 (D.C. Cir. 2001) involved an NMA challenge to certain OHA regulations not at issue in the instant action.

excepting it from the APA's burden of proof allocation. A.R. 19-21, 68 Fed. Reg. 66723 (November 28, 2003), pp. 66724-26.

For example, with regard to proceedings to review notices of violation or cessation orders pursuant to SMCRA §521(a)(1), OHA noted that both the legislative history and the text of the SMCRA make it clear that the purpose of this type of hearing is enable the operator to "present information," and that as such, the statute contemplates the operator carrying the ultimate burden. 68 Fed. Reg. 66723 (November 28, 2003), p. 66724. In support of its position, OHA cited a 7th Circuit case, *Old Ben Coal Corp. v. Interior Board of Mine Operations Appeals*, 523 F. 2d 25 (7th Cir. 1975). 68 Fed. Reg. 66723 (November 28, 2003), p. 66724. In *Old Ben*, the 7th Circuit held that the predecessor statute to the SMCRA, the Coal Mine Health and Safety Act, using substantially similar language as the SMCRA, contained an allocation of the burden of proof for a similar type of hearing. *Old Ben*, 523 F. 2d 25, 36 (7th Cir. 1975). OHA explained its view that *Old Ben* survived the holding of *Greenwich Collieries*. 68 Fed. Reg. 66723-01, p. 66724. However, OHA did amend one of its regulations pursuant to NMA's petition. OHA reached the conclusion that the SMCRA does not provide for a burden allocation with respect to a hearing imposing civil penalties on an individual who played a role in a corporation that was in violation of the SMCRA. 68 Fed. Reg. 66723-01, pp. 66725-6. As such, OHA concluded that APA §556(d) was applicable, and OSM should carry the full burden of persuasion in hearings imposing this kind of penalty. 68 Fed. Reg. 66723-01, pp. 66725-6.

On January 27, 2004, NMA filed the instant action seeking review of OHA's decision.

## II.     ARGUMENTS ON SUMMARY JUDGMENT

NMA argues that OHA's substantial denial of NMA's petition for rulemaking was arbitrary and capricious because the APA mandates that the burden of persuasion fall on OSM.

ORDER-9

NMA contends that such requirement is not contradicted by anything in the SMCRA. NMA further asserts that the challenged regulations violate well-established precepts of fairness and due process.

Defendants oppose NMA's motion and filed a cross motion for summary judgment. Defendants assert that this court lacks jurisdiction to hear what they characterize as a substantive challenge to five of OHA's longstanding regulations. Moreover, Defendants, argue, even if the court has jurisdiction, the denial of NMA's petition for rulemaking is entitled to "extreme" deference. Finally, Defendants believe that OHA's regulations easily survive under any level of judicial scrutiny.

## III.    DISCUSSION

### A.  Summary Judgment Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We "draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (citations omitted). In deciding whether summary judgment is appropriate, therefore, we resolve doubts in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 255 (1986) (citation omitted).

### B.  Jurisdiction

The SMCRA provides that any "action by the Secretary promulgating national rules or regulations . . . shall be subject to judicial review in the United States District Court for the District of Columbia Circuit." 30 U.S.C. §1276(a)(1). A petition for review of any such action must be filed "within sixty days from the date of such action, or after such date if the petition is

based solely on grounds arising after the sixtieth day." *Id.* This temporal limitation is jurisdictional in nature. *National Mining Ass'n v. Department of the Interior*, 70 F.3d 1345, 1350 (D.C. Cir. 1995) ("*NMA v. DOI 1995*"). OHA promulgated the challenged rules in 1978, 1988, and 1991. Thus, there is no doubt that NMA's January 27, 2004 complaint was filed long after the 60-day period expired. However, there are two exceptions to the 60-day limitation, and NMA attempts to avail itself of each.

### 1. Petition Based Solely on Grounds Arising After the 60th Day

The first exception is contained in the language of SMCRA §1276(a)(1), which provides that an action challenging the Secretary's rules may be brought outside the 60-day period "if the petition is based solely on grounds arising after the sixtieth day." NMA argues that the sole ground for its complaint was OHA's November 28, 2003 decision not to amend its regulations pursuant to the Court's opinion in *Greenwich Collieries*. Defendants object to that characterization, arguing that in reality, "the gravamen of the complaint is that the longstanding OHA rules are unlawful." Memorandum in Support of Defendants' Cross Motion at 6. Defendants take the position that *Greenwich Collieries* merely provided NMA with a pretext for making a substantive challenge to the rules, and that such arguments were available to NMA within the 60-day time frame. After a careful review of the complaint, the court is unable to agree with Defendants. OHA's denial of NMA's petition to amend the regulations pursuant to the holding of *Greenwich Collieries* is clearly the impetus for, as well as the true basis of, the complaint. The court therefore finds that NMA's complaint is based solely on grounds arising after the 60th day.

However, the parties' arguments do not end there. SMCRA §1276(a)(1) does not provide guidance on what statute of limitations should be applied to a complaint that fits into its

ORDER-11

exception language. Instead, Defendants ask that the court employ the general six-year statute of limitations for actions against the U.S. contained in 28 U.S.C. §2401(a), and find the action untimely. They suggest to the court that any grounds arising after the 60th day would have to be the issuance of *Greenwich Collieries* in 1994, rather than OHA's 2003 decision. Defendants hotly characterize the period between the *Greenwich Collieries* decision and NMA's filing of a complaint as a delay of "*more than nine years*." In turn, NMA blames OHA for the time that elapsed while it waited for *NMA v. DOI 2001* to be resolved, but offers no guidance to the court about what statute of limitation should apply to the exception language of SMCRA §1276(a)(1).

A pointed review of the chronology of this case reveals that Defendants, not Plaintiff, are to blame for the bulk of the delay in the filing of NMA's complaint. The Supreme Court opinion in *Greenwich Collieries* was issued on June 20, 1994. Approximately 18 months later, on January 17, 1996, NMA filed its petition with OHA seeking review of the regulations pursuant to *Greenwich Collieries*. On March 25, 1996, OHA informed NMA that it would postpone consideration of the petition pending resolution of a separate litigation between NMA and OHA over different regulations. That case, *NMA v. DOI 2001*, was not decided until June 8, 2001, over five years after OHA postponed ruling on NMA's petition. After the issuance of the opinion in *NMA v. DOI 2001*, OHA still took no action to consider NMA's 1996 petition. About 18 months later, on January 4, 2003, after NMA formally requested that OHA rule on its 1996 petition. OHA published it on March 20, 2003, as a "resubmitted" petition and sought comments. OHA issued its final decision on November 28, 2003. NMA filed its complaint in District Court on January 27, 2004, on the 60th day after OHA issued its decision.

This review reveals that a major part of the delay stemmed from OHA's unwillingness to consider NMA's petition until *NMA v. DOI 2001* was decided. In *NMA v. DOI 2001,* NMA

ORDER-12

challenged, among other things, the burden of proof allocations contained in two OHA regulations: 43 C.F.R. §§4.1374 and 4.1384. Neither of these regulations is being challenged by NMA in the instant case. The court sees no reason to opine about whether OHA's decision to wait for a final ruling on 43 C.F.R. §§4.1374 and 4.1384 before proceeding with NMA's challenge to the instant regulations was reasonable or not. Whether or not this postponement was justified, it is somewhat disingenuous of Defendants to attack NMA at this point on the basis of delay.

It is true that NMA could have filed suit at any time after *Greenwich Collieries*, without waiting for OHA to rule on its petition. However, NMA contends, probably correctly, that OHA would have moved to dismiss the complaint on ripeness grounds, or for a failure to exhaust administrative remedies. Such cases are routinely dismissed as premature where plaintiffs file actions without waiting for an agency to reach a final administrative decision. *See, e.g., Tennessee Gas Pipeline Co. v. FERC*, 9 F.3d 980, 980-81 (D.C. Cir. 1993) (a petition for review filed while a request for agency reconsideration is pending is "incurably premature"); *In re Monroe Communications Corp.,* 840 F.2d 942, 945-46 (D.C. Cir. 1988) (in *mandamus* action, three years of "administrative limbo" not unreasonable considering the great latitude given agencies to determine their own agendas). It was reasonable of NMA, therefore, to complete the administrative process prior to filing this action. After all, NMA had reason to believe a ruling from OHA would be forthcoming. A.R. at 80. Defendants would have the court place NMA in a Catch-22 situation, wherein would have to choose between filing this action without a final agency decision and having it dismissed as premature, or waiting, and then having the case dismissed as untimely. Clearly, that is an untenable situation for the Plaintiff.

ORDER-13

The court finds that there is jurisdiction pursuant to the exception contained in the language of SMCRA §1276(a)(1), which provides that an action challenging the Secretary's rules may be brought outside the original 60-day period "if the petition is based solely on grounds arising after the sixtieth day." The court further finds that the ground arising after the 60th day was OHA's November 28, 2003 decision. In the absence of any guidance to the contrary, the court assumes that the 60-day statute of limitations provided for in the statute reasserts itself to apply to any action filed pursuant to the exception. NMA's action, filed on the 60th day after OHA's November 28, 2003 decision, is therefore timely.

## 2. Reopener Doctrine

Moreover, the court is persuaded that there is another basis for jurisdiction. The "reopener doctrine" provides that a period for seeking judicial review can begin anew "when the agency in question by some new promulgation creates the opportunity for renewed comment and objection." *Edison Elec. Institute,* 996 F.2d 326, 331 (D.C. Cir. 1993) (citation omitted). NMA contends that OHA's November 28, 2003 decision reconsidering the burden of proof allocations in the five regulations at issue in light of *Greenwich Collieries* qualifies under the reopener doctrine to give this court jurisdiction.

Defendants counter that OHA's decision cannot be called a reopening of the rules, because OHA articulated the same rationale in 2003 for the rules as it did in 1978, i.e., that that SMCRA "as supported by the legislative history" allocates the burden of proof. *See* 43 Fed. Reg. 34,381 (1978) ("In addition, the legislative history clearly states that an applicant for review has the ultimate burden of proof in proceedings to review notices and orders.") NMA replies that OHA may have articulated the same rationale, but relied on it in a different enough manner as to justify judicial review of its position.

ORDER-14

In 1978, OHA justified the burden of proof allocations contained in its regulations as allowable under the APA and under the legislative history of the SMCRA. OHA made reference to the language of SMCRA §521(a)(4), interpreting it to mean that the ultimate burden of proof should rest with the permittee. 43 C.F.R. 34376, 34382. In its November 28, 2003 decision, however, it supported its allocations somewhat differently, classifying them as falling within the APA exception to its burden of proof allocation. 68 Fed. Reg. 66723 (November 28, 2003), p.66724. NMA believes that OHA's consideration of NMA's rulemaking petition in 2003, altering the reasoning supporting the burden allocations in the rules and amending one of its rules in reaction to NMA's petition pursuant to *Greenwich Collieries* reflects OHA's reconsideration – and thus reopening – of the rules. "[W]here an agency's actions show that it has not merely republished an existing rule. . . but has reconsidered the rule and decided to keep it in effect, challenges to the rule are in order." *Public Citizen v. NRC*, 901 F.2d 147, 150 (D.C. Cir. 1990).

Defendants admit that OHA "no longer relies on its previous understanding" of the meaning of the term "burden of proof" under the APA, and also concedes that it "had never expressly referenced the APA's 'exception' language until its 2003 petition denial." (Memorandum in Support of Defendants' Cross Motion at 8-9.) However, they oppose a finding of jurisdiction based on the reopener doctrine. Defendants call the court's attention to *NMA v. DOI*, 70 F.3d 1345, 1350-52 (D.C. Cir. 1995) ("*NMA v. DOI 1995*"), a case in which the D.C. Circuit Court declined to find jurisdiction on this basis. In *NMA v. DOI 1995*, the court held defendants' mere publication of a rule-making petition and statement of denial insufficient to justify reopening, and that doing so under those circumstances "would make a mockery of

Congress' careful effort to force potential litigants to bring challenges to a rule issued under [SMCRA] at the outset[.]" *NMA v. DOI 1995,* 70 F. 3d at 1350-51.

*NMA v. DOI 1995*, however, does more for the plaintiff than for the defendants. That court based its opinion in part on the fact that the arguments the plaintiff made were all arguments that had been available to it at the time the rule was adopted. *NMA v. DOI 1995*, 70 F.3d at 1350. In the instant matter, NMA had an entirely new ground for attacking the regulations—*Greenwich Collieries*' interpretation of APA §556(d). In addition, in *NMA v. DOI 1995*, the court contrasted the facts of that case with the facts of one in which the court chose to apply the reopener doctrine. *NMA v. DOI 1995*, 70 F.3d at 1352. The *NMA v. DOI 1995* court noted that in *Public Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147 (D.C. Cir. 1990), the court had found that the agency undertook a serious, substantive reconsideration of the rule at issue. *Id.*

In the instant matter, the same may be said. OHA published NMA's petition, gathered and considered comments on it, and crafted its November 28, 2003 decision carefully. The fact that OHA altered, at least to some extent, the basis underpinning the allocations of the burden of proof and actually amended one of its rules pursuant to NMA's petition, are further proof that it undertook the kind of serious, substantive reconsideration that justifies application of the reopener doctrine.

### C.  Standard of Review

The APA §706, Scope of Review, provides, in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

ORDER-16

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

contrary to constitutional right, power, privilege, or immunity;
in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

without observance of procedure required by law; . . .

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

The SMCRA provides that: "Any action subject to judicial review under this subsection shall be affirmed unless the court concludes that such action is arbitrary, capricious, or otherwise inconsistent with law." SMCRA §1276(a)(1). SMCRA §1276(b) also states that except as provided in Section 1276(a):

the findings of the Secretary if supported by substantial evidence on the record considered as a whole, shall be conclusive. The court may affirm, vacate, or modify any order or decision or may remand the proceedings to the Secretary for such further action as it may direct.

APA §706 has inspired many interpretations. As the D.C. Circuit court stated in *WWHT, Inc. v. FCC,* 656 F.2d 807, 817 (1981), "the parameters of the arbitrary and capricious standard of review [under APA §706] will vary with the context of the case." (Internal quotation marks omitted.) The court stressed, however, that "[i]t is only in the rarest and most compelling of circumstances that this court has acted to overturn an agency judgment not to institute a rulemaking." *Id.* at 818. *See also EMR Network v. Federal Communications Comm'n*, 391 F.3d

ORDER-17

269, 272-73 (D.C. Cir. 2004) (*citation omitted*), *cert. denied*, *EMR Network v. F.C.C.,* 545 U.S. 1116 (2005) (same).

Defendants urge the court to employ the most deferential standard of review. In fact, they believe the court must view OHA's actions with deference so extreme that it is "akin to non-reviewability." Memorandum in Support of Defendants' Cross Motion at 15, *quoting Cellnet Communication, Inc. v. FCC*, 965 F.2d 1106, 1111 (D.C. Cir. 1992). Defendants assert that in order to survive judicial scrutiny under this extremely deferential standard of review, an agency need only provide an "adequate response" to the concerns raised in a rulemaking petition. *NMA v. DOI 1995*, 70 F.3d at 1353. *See also National Coal Ass'n v. Uram*, 1994 WL 736422, at *4 (D.D.C. Sept. 16, 1994) (standard of review is "narrow" and rule must be affirmed if there is a "rational basis" for the agency's decision). Defendants also take the position that deference to an administering agency "is particularly appropriate" when dealing with a "complex regulatory statute" such as SMCRA. *In re Permanent Surface Mining Regulation Litigation*, 653 F.2d 514, 522-23 (D.C. Cir. 1981).

To the contrary, NMA claims that OHA's November 28, 2003 decision is subject to a searching review. NMA explains that under APA §706, the court is required to "engage in a substantial inquiry" and a conduct a "thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overturned on other grounds by Califano v. Sanders,* 430 U.S. 99, 105 (1977). *See also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1098 (D.C. Cir. 1996) ("judicial review of agency action under the APA must go beyond the agency's procedures to include the substantive reasonableness of its decision"). NMA also claims that a specific circumstance in this case lends extra support in favour of a probing review. NMA draws the court's attention to a 2004 case in which the D.C. Circuit held that one of the "strongest

ORDER-18

potential bases for overturning an agency's refusal to initiate a rulemaking [occurs when] a significant factual predicate of a prior decision on the subject has been removed." *EMR Network*, 391 F.3d at 273-74 (citation omitted). NMA argues that the issuance of the opinion in *Greenwich Collieries* effectively removed a factual predicate upon which OHA had justified the burden allocation in the relevant rules, and thus justifies a less deferential review.

The court finds that the appropriate standard of review in this case to be somewhat broader than that urged by Defendants, but narrower than that envisaged by NMA. In general, rulemaking is a legislative function that should be left to the discretion and expertise of an agency. In *WWHT, Inc. v. Federal Communications Commission*, 656 F.2d 807, 809 (D.C. Cir. 1981), the petitioners sought review of two Federal Communications Commission ("FCC") orders excluding certain scrambled signals from local pay stations from the mandatory carriage requirements of local cable television operators. The court in that case affirmed the orders of the FCC, holding that the decision to institute rulemaking is "largely committed to the discretion of the agency, and that the scope of review of such a determination must, of necessity, be very narrow." *Id.* "The Commission's substantive determinations are essentially legislative . . . and are thus committed to the discretion of the agency." *Id.* at 819. However, this does not mean that the court does not have an obligation to conduct a "thorough, probing, in-depth review." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overturned on other grounds by Califano v. Sanders,* 430 U.S. 99, 105 (1977).

Most importantly, the court is not persuaded by NMA's argument that the issuance of the Supreme Court decision in *Greenwich Collieries* constitutes the removal of "a significant factual predicate of a prior decision[.]" *EMR Network*, 391 F.3d at 273-74 (citation omitted). The Supreme Court's interpretation of the APA is not a factual matter; it is a legal determination. The

ORDER-19

instant case is therefore distinguishable from cases in which courts have found that changed factual circumstances warranted less deferential review. For example, in *Geller v. Federal Communications Commission*, 610 F.2d 973 (D.C. Cir. 1979), a newly enacted law removed the sole basis for certain FCC regulations, which had been an agreement reached some years prior. The agency, however, steadfastly refused to either terminate the regulations or show that they continued to have some basis in law. *Id.* at 979-80. The D.C. Circuit vacated the FCC order and remanded, explaining that an agency "cannot sidestep a re-examination of particular regulations when abnormal circumstances make that course imperative." *Id.* at 979. But the change in *Geller* was to the facts underpinning the rules—the agreement that was eventually superseded. In the instant case, the issuance of *Greenwich Collieries* removed some of the legal, not factual, justification for OHA's regulations.

Moreover, in the instant case, OHA did not refuse to address the change in circumstances. However belatedly, OHA provided a detailed opinion explaining why, despite the opinion in *Greenwich Collieries*, it declined to amend the majority of the regulations at issue. OHA articulated two reasons for its decision that *Greenwich Collieries* did not mandate revision of the challenged burden of proof allocations. First, OHA interpreted *Greenwich Collieries* as applicable only in situations where the evidence is equally balanced between the parties. 68 C.F.R. 66723 at 66724. Second, OHA explained its belief that the SMCRA itself provides for burden of proof allocations which means that the burden of proof allocations at issue are not governed by APA §556(d). 68 C.F.R. 66723 at 66724. This iteration of its reasoning, along with OHA's decision to amend one of the regulations at issue, distinguishes it from cases in which agencies have summarily refused to institute rulemakings. *See, e.g., American Horse Protection*

ORDER-20

*Ass'n*, 812 F.2d 1, 6 (D.C. Cir. 1987) (agency's two sentence conclusory explanation for its refusal to proceed with rulemaking found insufficient).

The APA clearly states that unless "*otherwise provided by statute*, the proponent of a rule or order has the burden of proof." 5 U.S.C. §556(d) (emphasis added). While the court is not charged with independently assessing the correctness of OHA's determinations, it does appear, with respect to the challenged regulations, that the SMCRA provides for a burden of proof distinct from that set forth in APA §556(d). It follows then that where a statute so provides, an agency is free to place the burden of proof on a party other than the proponent of a rule or order.

The court may "overturn an agency's decision not to initiate a rulemaking only for compelling cause, such as a plain error of law or a fundamental change in the factual premises previously considered by the agency." *National Customs Brokers & Forwarders v. United States,* 883 F.2d 93, 96-97 (D.C.Cir.1989) (citing *American Horse Protection Ass'n v. Lyng*, 812 F.2d 1, 5 (D.C.Cir.1987). For all the foregoing reasons, the court finds that OHA's decision was neither arbitrary nor capricious. It would be improper for the court, under these facts, to disturb OHA's findings.

The court hereby GRANTS Defendants' Cross Motion for Summary Judgment, DENIES NMA's Motion for Summary Judgment, and DISMISSES the case, with prejudice.

DATED this 15th day of April, 2011.


Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER-21